IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JONATHAN RAWSHIELD HILL

     Plaintiff,

v.                         CASE NO. 4:16-cv-309-WS-GRJ

JARVIS BRYANT, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 37, Defendants' Motion for Summary Judgment.[1] Plaintiff has filed a response in opposition. (ECF No. 52.) The motion is, therefore, ripe for review. For the reasons discussed below, the undersigned recommends that Defendants' Motion for Summary Judgment be granted.

---

[1] Defendants filed a motion to dismiss before filing their motion for summary judgment. (ECF No. 19.) In the motion to dismiss Defendants argued that (1) Plaintiff failed to state a cause of action for excessive force because Plaintiff had not established that Defendants used any force on him; and (2) Plaintiff failed to state a cause of action for deliberate indifference to a serious medical need because Plaintiff had not alleged a serious medical need or deliberate indifference. (*Id.*) Because Defendants filed the pending motion for summary judgment prior to the Court's ruling on the motion to dismiss and because the pending motion for summary judgment reasserts the same points previously made, the motion to dismiss is due to be denied.

# I. INTRODUCTION

Plaintiff is an inmate in the custody of the Florida Department of Corrections ("FDOC"), currently housed at Okaloosa Correctional Institution. Plaintiff initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for claims centering around an incident while Plaintiff was incarcerated at Leon County Jail. Specifically, Plaintiff alleges that Defendants violated his Eighth Amendment rights by using excessive force on him and by their deliberate indifference to his serious medical needs. (ECF No. 1.)

Defendants filed a motion for summary judgment, arguing that (1) Plaintiff's claims are barred under the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff cannot establish an excessive force claim or deliberate indifference claim; and (3) all Defendants enjoy qualified immunity. (ECF No. 37.)

In support of their motion for summary judgment, Defendants have submitted the following exhibits: an affidavit of Defendant Jarvis Bryant (ECF No. 37-1 ("Bryant Aff.")); an affidavit of Gabriel Clana (ECF No. 37-2 ("Clana Aff.")); an affidavit of Kimberley Petersen (ECF No. 37-3 ("Peterson Aff.")); an affidavit of Defendant Brian Bland (ECF No. 37-4 ("Bland Aff."));

an affidavit of Michele Barnett (ECF No. 37-5 ("Barnett Aff.")); an affidavit of Celeste MacDonald (ECF No. 37-6 ("MacDonald Aff.")); an affidavit of Defendant Korey Smith (ECF No. 37-7 ("Smith Aff.")); and video footage of the events of May 17, 2016, from both K Pod and K Pod Corridor (ECF No. 38 ("Pod Video" & "Corridor Video")).

Plaintiff thereafter filed his response in opposition to Defendants' motion for summary judgment. (ECF No. 52.) Although Plaintiff did not include any sworn affidavits in support of his response, Plaintiff included the following exhibits: health service request forms (*Id.* at 11–18); notes from Plaintiff to the Leon County Sheriff's Office (*Id.* at 19–21); FDOC Health Slip/Pass (*Id.* at 22); a letter from the Leon County Sheriff's Office to Plaintiff (*Id.* at 23); a screen shot from the video of K Pod (*Id.* at 24); and results from x-rays of Plaintiff's back.[2] (ECF No. 53 at 2.)

In addition to the exhibits listed above, Plaintiff's complaint and response to Defendants' motion for summary judgment were signed under penalty of perjury.  Thus, Plaintiff's complaint and response are properly

---

[2] As part of Plaintiff's evidence in opposition to Defendants' motion for summary judgment, Plaintiff submitted a Radiology Interpretation stating that Plaintiff suffered from a spinal compression of indeterminate age and a Health Slip/Pass from the Florida Department of Corrections authorizing him for use of back brace. (ECF No. 52 at 22; ECF No. 53.) Defendants have filed a motion to strike these two exhibits, arguing that they are irrelevant and lack proper foundation for admission. (ECF No. 54.)

treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). The sworn allegations in Plaintiff's complaint and response, therefore, may be considered in ruling on the motion for summary judgment.

## II. EVIDENCE

On the evening of May 17, 2016, while incarcerated at the Leon County Sheriff's Office Jail, Plaintiff was involved in an altercation with Defendant Jarvis Bryant, a correctional officer ("Officer Bryant"), around 9:20 PM, which led to the events described in Plaintiff's complaint. (ECF No. 1.) Plaintiff's version of events differs from the version provided by Defendants. Both versions are discussed in turn below.

According to Plaintiff, Officer Bryant told Plaintiff to "lock down"[3] for saying the word "damn." Plaintiff says he complied with this order. When they walked together into Plaintiff's cell located in K Pod, Officer Bryant allegedly grabbed Plaintiff's legal work and began throwing it around the

---

[3] An order to lock down is an order for inmates to return to their cells immediately. *See* (ECF No. 37-1 at 2.)

room. According to Plaintiff, Officer Bryant also called Plaintiff a "fuck nigga" and "a pussy." (ECF No. 1 at 5.)

Plaintiff alleges that Officer Bryant then grabbed Plaintiff around the neck with one hand and sprayed him in the eyes with Oleoresin Capsicum ("O.C. Spray"), commonly known as pepper spray. Plaintiff says that Officer Bryant also grabbed Plaintiff with both hands and choked him "breathless" for seven to eight minutes, first pushing Plaintiff backward into a steel desk inside the cell and eventually pushing him out of the cell toward the slider exit glass door. (*Id.* at 5–6.)

Defendant Brian Bland, a correctional officer ("Officer Bland"), then handcuffed Plaintiff and took him to medical. Plaintiff alleges that Officers Bland and Smith stood over Plaintiff while the nurse examined him at medical, scaring Plaintiff from speaking to the nurse. According to Plaintiff, the nurse checked only his blood pressure before Officer Bland and Officer Smith made Plaintiff get up and leave. Plaintiff says that Officers Bland and Smith then put him into confinement to suffer from the residual O.C. Spray. (ECF No. 1 at 6.)

Plaintiff alleges that at some point after Officer Bryant sprayed Plaintiff in the face, Officer Bryant threw away the empty spray can and

Officers Bland and Smith gave Officer Bryant a new can, removing the empty one from the trash can. (ECF No. 52 at 3.)

According to Plaintiff, his injuries include a swollen neck, burning eyes, and pain in the lower back. In addition, he says he suffers from nervous energy, sleep problems, changes in appetite, headaches, anger, rage, fear, confusion, over-sensitivity, helplessness, and difficulty making decisions. (ECF No. 1 at 6–7.) Plaintiff alleges that he also suffered a fractured disc in his lower back and now has to wear a back brace twenty-four hours a day as a result Officer Bryant's use of force. (ECF No. 52 at 3.) Plaintiff seeks monetary damages and requests medical attention from a doctor and a psychologist for his resulting injuries. (ECF No. 1 at 6–7.)

Defendants' version of events is markedly different. According to Defendants sworn declarations, shortly after 9:00 PM on May 17, 2016, Officer Bryant ordered Plaintiff to lock down several times, and Plaintiff refused to follow these orders. Officer Bryant and Plaintiff then entered Plaintiff's cell, where Officer Bryant ordered Plaintiff to "roll up" his belonging to be moved into a different level of confinement. Officer Bryant claims that Plaintiff became defiant, using racial slurs and curse words against him and said, "I remember where your momma stay don't think I

won't see you out there I'm getting out soon." (Bryant Aff. ¶¶ 6, 10; Clana

Aff. ¶ 5.)

    While still inside Plaintiff's cell, Officer Bryant removed several

contraband items from the wall and threw them out of the cell door. (Bryant

Aff. ¶ 11; Pod Video at 21:04:55, 21:06:01.[4]) Additionally, Plaintiff refused

to comply with verbal orders Officer Bryant gave him in the cell, so Officer

Bryant attempted to spray Plaintiff with O.C. Spray, but his can was empty.

(Bryant Aff. ¶ 12.)  Because the can was empty Officer Bryant was unable

to spray Plaintiff with O.C. Spray. (*Id.*; Clana Aff. ¶ 8.) Additionally, Officer

Bryant says he did not touch Plaintiff while they were inside Plaintiff's cell.

(Bryant Aff. ¶ 14; Clana Aff. ¶¶ 6, 7.) Officer Bryant and Plaintiff exited the

cell just two minutes after entering. (ECF No. 37 at 6; Pod Video at

21:03:59–21.06.09.)

    Officer Bryant claims that he then escorted Plaintiff to the K Pod

slider "using both of his hands and forearms and taking [Plaintiff] by the

neck and shoulder area." (Bryant Aff. ¶ 15.) Immediately following the

incident in Plaintiff's cell, Plaintiff was moving freely and did not appear in

---

[4] While the Pod Video shows items being thrown out of Plaintiff's cell, it is
unclear from the footage alone whether the items being thrown out of the cell were
contraband. (Pod Video at 21:06.)

any distress. (*Id.*; Corridor Video at 21:06:20.) There was also no evidence of O.C. Spray residue on Plaintiff's face, and he did not appear to be suffering from any side effects from the use of O.C. Spray. (Corridor Video 21:09:27–21:12:27.)

Plaintiff was then escorted to medical for screening, where he was seen by a registered nurse, Michelle Barnett. Barnett noted in her Medical/Mental Health Assessment that Plaintiff complained that he had been choked and had burning eyes, but she did not observe any signs of bruising, trauma, injury to neck, or redness of the eyes or face. (ECF No. 37 at 6–7; Barnett Aff. ¶¶ 4–5, 7.)

Officers Bland and Smith state that at no point during the examination did they attempt to persuade or encourage medical staff to not do a thorough evaluation of Plaintiff or to falsify any documents. Further, both Officers Bland and Smith allege that they did not observe any evidence that Plaintiff was sprayed with O.C. Spray. (Bland Aff. ¶¶ 10, 12; Smith Aff. ¶¶ 6, 8.)

Two days later Plaintiff was seen by a nurse practitioner, Celeste MacDonald. Plaintiff reported a back injury and a sore throat. At this assessment, MacDonald observed that Plaintiff had a full range of motion to his lower back, a steady gait, and no facial grimaces with movement.

Also, Plaintiff was able to hop onto the exam table with no difficulty.

MacDonald concluded that Plaintiff suffered from chronic low back pain

and a common cold. (MacDonald Aff. ¶¶ 4–10.)

### III. SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of

summary judgment is appropriate only when the Court is satisfied that

"there is no genuine dispute as to any material fact and the moving party

is entitled to a judgment as a matter of law." In applying this standard, the

Court must examine the pleadings, depositions, answers to interrogatories,

and admissions on file, together with any affidavits and other evidence in

the record "in the light most favorable to the nonmoving party." *Samples on*

*Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must use

affidavits, depositions, answers to interrogatories, or other admissible

evidence to demonstrate that a material fact issue remains to be tried. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v.*

*Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish
> between evidence of disputed facts and disputed matters of
> professional judgment. In respect to the latter, our inferences
> must accord deference to the views of prison authorities. Unless
> a prisoner can point to sufficient evidence regarding such issues
> of judgment to allow him to prevail on the merits, he cannot
> prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based

on subjective beliefs are insufficient to create a genuine issue of material

fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d

1275, 1279 (11th Cir. 2001).

The Court must view the evidence and inferences drawn from the

underlying facts in the light most favorable to the non-movant. *Earley v.*

*Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when

opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284

(11th Cir. 2013) (internal quotations and citations omitted); *see also*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (stating that to

defeat summary judgment "there must be evidence on which the jury could

reasonably find for the plaintiff"). "The nonmovant need not be given the

benefit of every inference but only of every reasonable inference." *Brown v.*

*City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The

summary judgment standard requires that we resolve all reasonable

doubts in favor of the non-moving party, but it does not require us to

resolve all doubts in such a manner.").

## IV. DISCUSSION

Plaintiff alleges that Officer Bryant used excessive force against him

in violation of his Eighth Amendment rights.[5] Plaintiff also contends that

Officers Bland and Smith violated his constitutional rights by allowing

Officer Bryant to do so and by their deliberate indifference to Plaintiff's

medical needs. Officer Bryant, however, contends that the force used did

not rise to the level described by Plaintiff nor to a level that would violate

the Fourteenth Amendment. Officers Smith and Bland argue that Plaintiff's

claims against them are barred for failure to exhaust and that Plaintiff did

---

[5] Although Plaintiff alleges Eighth Amendment violations of excessive force in his complaint, excessive force claims by pretrial detainees, such as Plaintiff, are properly stated under the Fourteenth Amendment. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). The standards under the Eighth Amendment and Fourteenth Amendment are essentially the same.

not have a serious medical need, so they could not have been deliberately indifferent to a serious medical need.

### A.   The PLRA bars Plaintiff's claims against Officers Smith and Bland because Plaintiff failed to exhaust his administrative remedies.

Officers Smith and Bland first argue that Plaintiff's claims against them are barred because Plaintiff failed to exhaust his administrative remedies, as required by the PLRA. (ECF No. 37 at 11–15.) Because Plaintiff failed to exhaust his administrative remedies with regard to his claims against Officers Smith and Bland, Defendants are entitled to summary judgment with respect to those claims.

Under § 1997e(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a); *see also Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock*, 549 U.S. 199, 211 (2002). The requirement to exhaust "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue v. Pearson,* No. CV410-240, 2011 WL 2457501, at *1 (S.D. Ga. June 16, 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285–86 (11th Cir. 2005)). Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock,* 549 U.S. 199, 211 (2002).

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024–25 (7th Cir. 2002)).

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530

F.3d 1368, 1374, 1376 (11th Cir. 2008.) Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211–12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step;

such findings are subject to review on appeal for clear error).[6]

Applying the requisite two-step *Turner* analysis here, the factual allegations regarding Plaintiff's grievances in Defendants' motion for summary judgment conflict with Plaintiff's response. While Plaintiff does not say whether he exhausted his claims against Officers Smith and Bland, he says that he tried to exhaust his remedies but that the jail officials "played hide and seek with grievance form." As a result, Plaintiff says that administrative remedies were unavailable to him. (ECF No. 52 at 4–5.).

Turning to step two of the *Turner* analysis, the Court must make specific factual findings regarding the factual disputes. First, although Plaintiff failed to comment specifically on whether he filed anything with regard to Officers Smith and Bland, the Court finds that Plaintiff did not properly exhaust his administrative remedies against those two Defendants.

Although it is Defendants' burden to prove that Plaintiff failed to exhaust his available administrative remedies, Defendants have met that burden. According to Defendants, while Plaintiff submitted multiple "Notes

---

[6] In *Whatley*, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of *Turner*, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the *de novo* standard of the first *Turner* step or the "clear error" standard of the second *Turner* step. 802 F.3d at 1213.

from Prisoner" in an effort to show exhaustion, these grievances complain only of misconduct by Officer Bryant and fail entirely to mention Officers Bland and Smith. (*See* ECF No. 52 at 19–21.) Additionally, the Detention Chief for the Sheriff stated that although at all relevant times the grievance procedure for the Leon County Jail was available to all inmates, Plaintiff's file contains no complaints, grievances, or "Notes from Prisoner" relating to the May 17, 2016 incident that mention Officers Bland or Smith. (Petersen Aff. ¶ 5–7.) Therefore, Plaintiff has failed to exhaust his claims against Officers Smith and Bland.

With regard to Plaintiff's allegations that jail officials "played hide and seek with the grievance form"—and therefore while the administrative remedies were officially on the books, they were not capable of use to actually obtain relief, (ECF No. 52 at 4–5)— the Court finds that this argument wholly fails to excuse Plaintiff's failure to exhaust.

In discussing what would excuse a prisoner's failure to exhaust, the Eleventh Circuit has stated that "it is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate." *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008). Plaintiff, however, does not claim that retaliation or threatened retaliation prevented

him from properly exhausting prior to filing suit. Plaintiff's conclusory allegation, without any supporting evidence that jail officials were hiding grievance forms, does not constitute a threat of retaliation.

Further, to the extent that Plaintiff argues that administrative remedies were generally unavailable to him, his argument is without merit. Plaintiff's allegation that administrative remedies were unavailable to him because prison administrators prevented Plaintiff from taking advantage of them is undermined by the fact that Plaintiff, by his own admissions, was able to successfully submit grievances during the relevant time period. Plaintiff provided the Court with three Notes from Prisoner he submitted to prison officials in May and June of 2016. These submissions do not mention Officers Smith and Bland.  Thus, Plaintiff's claim that he could not file grievances is undermined by the fact that he filed Notes from Prisoner—advising jail officials of his grievances— during the same time frame he says he was prevented from doing so by jail officials. Plaintiff therefore has not established that administrative remedies were unavailable to him. *See West*, 589 F. App'x at 926 n.4 ("As to [plaintiff's] assertions that prison officials obstructed his efforts to exhaust his administrative remedies, given the multiple grievances filed by [plaintiff]

with both the regional director and the General Counsel, the record does not support such a conclusion.").

Lastly, to the extent that Plaintiff claims that he did not exhaust his claims because administrative remedies were inadequate and would not actually provide Plaintiff with relief, this argument does not excuse Plaintiff's failure to exhaust. *See Logue,* 2011 WL 2457501, at *1 (stating that the prisoner must exhaust "even if the available administrative remedies are 'futile or inadequate.'"(citing *Harris,* 190 F.3d at 1285–86))*.*

Accordingly, the Court concludes that Plaintiff failed to exhaust his claims against Officers Bland and Smith, and therefore Officers Bland and Smith are entitled to summary judgment on Plaintiff's claims against them.

> ### B.   The PLRA bars Plaintiff's claims for punitive and compensatory damages because Plaintiff has failed to prove more than a *de minimis* physical injury.

Defendants next argue that Plaintiff is not entitled to claim compensatory or punitive damages because Plaintiff has failed to show that he suffered from a physical injury as required by the PLRA. (ECF No. 37 at 15–17.) Because Plaintiff has failed to prove that he suffered any injury resulting from the conduct of Defendants, the Court finds that the PLRA bars Plaintiff's claims for punitive and compensatory damages.

Under the PLRA, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). According to the Eleventh Circuit, the PLRA precludes claims for punitive and compensatory damages absent a showing of physical injury. *Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) (citing *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007)). Because Plaintiff seeks "monetary damages" generally, which would include both compensatory and punitive damages, the relevant inquiry is whether Plaintiff has shown a physical injury.

The Court concludes that Plaintiff has failed to show the requisite physical injury to support a claim for punitive or compensatory damages. "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." *Mann v. McNeil*, 360 F. App'x 31, 31 (11th Cir. 2010) (quoting *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–13 (11th Cir. 2002)). Although the injuries must be greater than *de minimis*, the physical injuries need not be significant. *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007); *Harris v. Garner*, 190

F.3d 1279, 1286 (11th Cir. 1999), *op. reinstated in part on rehearing*, 216 F.3d 970 (2000).

As evidenced by the record, Plaintiff did not suffer any physical injuries as a result of Defendants' conduct. The videos of Plaintiff immediately following the incident do not show him in any kind of physical distress and he appears to be moving without trouble. (Pod Video; Corridor Video.) Additionally, in Plaintiff's visit to medical after the incident, Plaintiff did not have any signs of bruising, trauma, injury to the neck, or redness of the eyes or face. (Barnett Aff. ¶¶ 4–5, 7; Bland Aff.; Smith Aff.) Further, his medical assessment two days later revealed that Plaintiff had a full range of motion to his lower back, a steady gait, and no difficulty hopping onto the exam table. (MacDonald Aff. ¶¶ 4–10.) Although Plaintiff was diagnosed with chronic back pain, there was no evidence that Defendant Bryant caused Plaintiff any injury as a result of the incident.

Applying Eleventh Circuit precedent, Plaintiff's injuries, if any, do not constitute injuries that are more than *de minimis*. *See Mann*, 360 F. App'x at 31 (vague back injuries and scrapes and marks on knees and legs amount to *de minimis* injuries); *Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 (11th Cir. 2009) (temporary chest pain, headache, and

periodic episodes of back pain not more than *de minimis* injuries as they

required no immediate medical attention or evidenced physical injury

beyond discomfort); *Dixon*, 225 F. App'x at 799 (bruising from restraints is

*de minimis* injury).

While the contours of the physical injury requirement under the PLRA

is not subject to a precise definition, one court has aptly observed that "[A]

physical injury is an observable or diagnosable medical condition requiring

treatment by a medical care professional. It is not a sore muscle, an aching

back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or

three weeks. . . . Injuries treatable at home and with over-the-counter

drugs, heating pads, rest, etc., do not fall within the parameters of

1997e(e)." *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).

The fact that Plaintiff claims he has suffered additional injuries is not

sufficient to meet the more than *de minimis* standard of the PLRA because

the records do not support a claim that Defendants caused Plaintiff to

suffer from *any* physical injury. Plaintiff's allegations regarding his injuries

mostly include emotional injuries, but he also says he suffered from a

fractured disc in his lower back as well as headaches. (ECF No. 1 at 6;

ECF No. 52 at 3.) Although Plaintiff has submitted evidence that he has an

issue with his back, he has failed to show that this back injury has anything to do with Defendants' conduct.[7] "Self-serving statements by a plaintiff do not create a quest of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010). Without evidence to support Plaintiff's claims, the medical records from immediately following the alleged incident reveal that Plaintiff suffered no more than *de minimis* physical injury from Defendants.

In short, Plaintiff has failed to prove that he suffered more than *de minimis* physical injuries, so he is precluded under the PLRA from bringing claims for punitive and compensatory damages. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims for punitive and

---

[7] Plaintiff provided radiology results from his lumbar spine dated January 13, 2017, more than seven months after the alleged incident occurred. The radiology results are not admissible because they are not authenticated with a declaration of witness with personal knowledge as required by Rules 901 and 902 of the Federal Rules of Evidence. Defendants have moved to strike the exhibit for this reason as well as others. ECF No. 54. The exhibit is due to be stricken and therefore Defendant's Motion to Strike, ECF No. 54, is due to be **GRANTED**. Even assuming, however, that the Court did not strike this exhibit and considered the radiology results, the results fail to demonstrate that Plaintiff's back issue has anything to do with this incident.These records note that Plaintiff has a history of chronic back pain and that he has "a less than 50% superior compression L1 of *indeterminate age*." (ECF No. 53 at 2.) (emphasis added) These radiology results evidence back problems predating the incident and at best evidence the existence of a back injury more than seven months after the incident. In contrast the medical records from the examinations directly after the incident and two days after the incident do not disclose that Plaintiff sustained any injury to his back. Accordingly, Plaintiff has failed to meet his burden of demonstrating that Defendants caused the problem with his back.

*Case No: 4:16-cv-309-WS-GRJ*

compensatory damages.

### C. Officer Bryant is entitled to summary judgment on Plaintiff's excessive force claim.

Next, Defendants argue that Plaintiff cannot establish an excessive

force claim because there is no evidence Officer Bryant used excessive

force on Plaintiff. Specifically, they argue the evidence demonstrates that

Officer Bryant did not "choke Plaintiff breathless" nor did he spray Plaintiff

in the eyes with O.C. Spray. (ECF No. 37 at 18–22.)

With regard to claims brought by pretrial detainees, such as Plaintiff,

the Eleventh Circuit has stated that

> [c]laims involving the mistreatment of arrestees or pretrial
> detainees in custody are governed by the Fourteenth
> Amendment's Due Process Clause instead of the Eighth
> Amendment's Cruel and Unusual Clause, which applies to such
> claims by confined prisoners. However, the applicable standard
> is the same, so decisional law involving prison inmates applies
> equally to cases involving arrestees or pretrial detainees.

*Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted).

The use of excessive physical force against an arrestee or pretrial

detainee may constitute a deprivation of due process in violation of the

Fourteenth Amendment. *See Fennell v. Gilstrap*, 559 F.3d 1212, 1217

(11th Cir. 2009). In determining whether the force used was excessive, the

inquiry focuses on "whether force was applied in a good-faith effort to

maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (*quoting Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Force is excessive if it "shocks the conscience." *Fennell*, 559 F.3d at 1217.

To prevail on an excessive force claim against a prison official, an inmate must establish both a subjective and objective component. *Id.* at 8; *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006). The subjective component requires proof that the prison official acted "with a sufficiently culpable state of mind." *Id.* The objective component requires proof that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.*

"[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 9). Generally, *de minimis* uses of physical force and *de minimis* injuries do not give rise to a constitutional claim. *Id.* at 38 (citing *Hudson*, 503 U.S. at 9–10). "Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" *Johnson*, 206 F. App'x at 884–85 (quoting *Hudson*, 503 U.S. at 9–10).

The Court must consider five factors in determining whether force was used sadistically and maliciously:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th  Cir. 1999) (quotations and citations omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

Turning to Plaintiff's claims of excessive force, no reasonable jury could conclude that Officer Bryant used excessive force against Plaintiff by spraying him with O.C. Spray. The Eleventh Circuit has concluded that the use of chemical agents on disruptive prisoners is not *per se* unconstitutional.  *Danley,* 540 F.3d at 1307 ("Pepper spray is an accepted non-lethal means of controlling unruly inmates[,] . . . [and a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"); *Soto v. Dickey,* 744 F. 2d 1260, 1270 (7th Cir. 1984) ("The Supreme Court has never held, nor have we or any

other court of appeals, so far as we can determine, that the use of tear gas

or a chemical agent is a per se violation of the Eighth Amendment . . .")*;*

*Spain v. Procunier,* 600 F.2d 189, 196 (9th Cir. 1979) ("[U]se of

nondangerous quantities of [tear gas] in order to prevent a perceived future

danger does not violate 'evolving standards of decency' or constitute an

'unnecessary and wanton infliction of pain.'").

    While a prison official spraying an inmate in the eyes with O.C. Spray

for no reason may constitute excessive force in certain circumstances,

there is no evidence before the Court that Plaintiff was sprayed with O.C.

Spray by Officer Bryant. Declarations by Officers Bryant, Bland, and Smith,

as well as by Gabriel Clana and Nurse Michelle Barnett evidence that

Plaintiff was not sprayed with O.C. Spray during the incident. (Bryant Aff.;

Bland Aff.; Smith Aff.; Clana Aff.; Barnett Aff.) Plaintiff's own conclusory

allegations are the only evidence offered by Plaintiff that Officer Bryant

sprayed him with O.C. Spray, and such unsworn and unsupported

allegations are insufficient to refute Defendants' well-supported motion for

summary judgment.

    This conclusion is further supported by the Corridor Video—showing

Plaintiff only minutes after he alleged he was sprayed.  The Corridor Video

shows no evidence of Plaintiff experiencing tearing, involuntary closing of

eyes, nasal discharge, sneezing, disorientation, symptoms of respiratory

distress, or any physical distress at all. Notably, the video does not show

any colored residue on Plaintiff's face.[8] Courts have noted that the use of

O.C. Spray "causes tearing and involuntary closing of the eyes, nasal

discharge, sneezing, disorientation, and the sensation of respiratory

distress." *Smith v. Tifft*, No. 3:12cv172/RV/CJK, 2014 WL 8021560 n.4

(N.D. Fla. Nov. 7, 2014) (citing Fla. Admin. Code r. 33-602.210(9)(a)1

(2014)).

Similarly, the Pod Video shows that none of the inmates gathered

around Plaintiff's cell at the time of the alleged use of spray showed any

signs that O.C. Spray had been deployed in the near vicinity.

In short, the video evidence in the record fails to disclose any

evidence that Plaintiff was sprayed shortly before the video and instead

underscores that Plaintiff has not submitted any evidence that Officer

Bryant sprayed him in the face with O.C. Spray. "When opposing parties

tell two different stories, one of which is blatantly contradicted by the

---

[8] Sworn affidavits by Defendants disclose that they carried a brand of O.C. Spray that emitted a red or orange color liquid. (Bryant Aff. ¶ 12; Bland Aff. ¶ 9.) Plaintiff has not disputed this fact.

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgement." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Accordingly, for purpose of ruling on the motion for summary judgment the Court declines to adopt Plaintiff's unsupported and conclusional version of facts with regard to his claim that he was O.C. Sprayed. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible.").

The Court now turns to Plaintiff's claim that Officer Bryant used excessive force on Plaintiff by choking him.  Unlike Plaintiff's allegation regarding the use of O.C. Spray, the resolution of Plaintiff's choking claim depends not on whether Defendant used any force on Plaintiff but instead whether the force used was excessive. Even considering the facts in the light most favorable to Plaintiff, as the Court must, the Court concludes that Officer Bryant did not use excessive force on Plaintiff and therefore, summary judgment is due to be entered on this claim.

Although the video evidence does not show what occurred when Plaintiff and Officer Bryant were inside Plaintiff's cell, the video clearly

contradicts Plaintiff's allegations about the severity of Officer Bryant's conduct. According to Plaintiff, Officer Bryant choked Plaintiff for seven to eight minutes from inside his cell to outside the slider exit glass door of K Pod. (ECF No. 1 at 6.) Based on the video, this is not possible.

The Pod Video shows that Plaintiff was only inside his cell with Officer Bryant for about two minutes. (Pod Video 21:04:06–21:06:09.) During this time, items were thrown out of Plaintiff's cell appear, which refutes Plaintiff's allegation that Officer Bryant was also choking Plaintiff "breathless" with both hands during the time they were in the cell. When Plaintiff appears on the video after exiting his cell, Officer Bryant is not choking him. The video depicts Plaintiff standing by himself in the doorway of his cell. Officer Bryant then exits the cell and puts his hands on Plaintiff's neck, walking him quickly to the slider exit glass door. (Pod Video 12:06:11–21:06:16.)  The video shows that Officer Bryant's hands are on Plaintiff's neck for only five seconds. When Plaintiff appears again on the Corridor Video moments after exiting K Pod, no one is choking him. (Corridor Video 21:06:21.) When Plaintiff reappears again, he is not in any distress and the video does not show anyone touching him for the remainder of the time he appears on the footage. (Corridor Video

21:09:27–21:12:27.) Simply put, the video evidence demonstrates that Officer Bryant did not choke Plaintiff for seven to eight minutes.

Apart from Plaintiff's unsupported allegations, the other evidence does not demonstrate that the force used by Officer Bryant was excessive. The part of the Pod Video that shows Officer Bryant holding Plaintiff by the neck and moving him toward the K Pod exit—which Officer Bryant admits shows him performing an "improper escort technique"—fails to show a use of force which was so egregious that it shocks the conscience. *See Cockrell v. Sparks*, 510 F. 3d 1307, 1311 (11th Cir. 2007) ("Government action, including the use of force by prison guards, will only violate substantive due process rights under the Fourteenth Amendment when it is so egregious that it shocks the conscience.").

Additionally, Officer Bryant is afforded discretion in carrying out his duties as a correctional officer, including how to respond when prisoners fail to comply with orders. In "consider[ing] whether the jailers' use of force was excessive, we must 'give a wide range of deference to prison officials acting to preserve discipline and security.'" *Danley*, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting *Bennett*, 898 F.2d at 1533)*, overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).  Notably,

"[e]ven where an inmate is not physically resisting and is instead refusing to follow orders, the use of force may be necessary." *Pavao v.* Miles, No. 5:15-cv-68-RH-GRJ, 2017 WL 1173956, at *7 (N.D. Fla. Feb. 8, 2017); *see also Sanchez v. McCray*, 349 F. App'x 479, 482–83 (11th Cir. 2009) (refused to comply with orders to surrender his personal belongings); *Brown v. Smith*, 813 F.2d 1187, 1189 (11th Cir. 1987) (refused to enter his cell when ordered to do so and resisted guard's attempt to take his arm and lead him into the cell).

Officer Bryant had discretion in ensuring Plaintiff complied with his orders. Plaintiff admits in his complaint that he had been ordered to lock down for screaming the word "damn." Thus, Officer Bryant's conduct toward Plaintiff during the alleged incident was ensure that Plaintiff complied with the lock down order as well as the order to "roll up" his belongings to be moved to a more restrictive confinement setting. (Bryant Aff. ¶¶ 6–9.) Although Officer Bryant admits that his conduct in ensuring Plaintiff's compliance with his orders was improper, the force was used only briefly.

An improper escort or failure to comply with the policies of Leon

County Sheriff's Office[9] does not necessarily equate to excessive force in violation of the Constitution. "The management by a few guards of large numbers of prisoners . . . may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Bennett*, 898 F.2d at 1533 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Whitley v. Albers*, 475 U.S. 312, 327 (1986) (recognizing that only unnecessary and wanton inflictions of pain are barred by the Eighth Amendment); *see also Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.").

Most importantly, Plaintiff did not suffer any physical injuries as a result of the brief improper escort. Again, *de minimis* uses of physical force and *de minimis* injuries do not give rise to a constitutional claim. *Wilkins*, 559 U.S. at 38. The video evidence does not show Plaintiff in any kind of

---

[9] Officer Bryant received an eight-hour suspension for this improper escort because he violated the Leon County Sheriff's Office policy. (Bryant Aff. ¶ 18; ECF No. 37 at 20.)

physical distress. Further, as discussed more extensively above, the medical records from immediately following the incident show that Plaintiff did not have any signs of bruising, trauma, injury to the neck, or redness of the eyes or face. (Barnett Aff.) Accordingly, the medical record supports the conclusion that the force used was not excessive.

Because Plaintiff has offered no evidence of excessive force apart from his own conclusional allegations and because the evidence—including video footage and medical records—shows otherwise, the Court finds that there is no genuine dispute of material fact with regard to the use of force used by Officer Bryant. Accordingly, Officer Bryant is entitled to summary judgment as to Plaintiff's claims of excessive force.

### D. Even if Plaintiff had exhausted his claims against Officers Smith and Bland, they would be entitled to summary judgment on Plaintiff's deliberate indifference claim.

Defendants next argue that even if Plaintiff was not barred by the PLRA from pursuing his claims against Officers Bland and Smith for failure to exhaust, Plaintiff has failed to allege facts establishing that Officers Bland and Smith were deliberately indifferent to a serious medical need. (ECF No. 37 at 22–24.) Because Plaintiff has failed to show that he had a serious medical need and because Officers Smith and Bland escorted

Plaintiff to medical following the incident with Officer Bryant, the Court finds

that Officers Smith and Bland are entitled to summary judgment on

Plaintiff's claims of deliberate indifference.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held

that deliberate indifference to the serious medical needs of prisoners

violates the Eighth Amendment prohibition against cruel and unusual

punishment. To establish an Eighth Amendment violation stemming from

the deprivation of medical attention, the prisoner must set forth evidence of

an objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs.  *Farrow v. West*, 320 F.3d

1235, 1243 (11th Cir. 2003).

A claim that a prisoner has been deprived of medical attention

requires that the prisoner demonstrate "an objectively serious medical

need," which is one that is (1) so grave that, "if left unattended, poses a

substantial risk of serious harm," and (2) that the officials' response was so

inadequate as to "constitute an unnecessary and wanton infliction of pain,"

and was not "merely accidental inadequacy, negligence in diagnosis or

treatment, or even medical malpractice actionable under state law."  *Taylor*

*v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and

wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Further, a prisoner must demonstrate a "subjective intent to punish," by showing an attitude of "deliberate indifference," which requires showing an "aware[ness] of facts from which the inference could be drawn that a substantial risk of harm exists [ ] and . . . draw[ing of] the inference." *Taylor*, 221 F.3d at 1258 (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, a prisoner must prove four things: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Id.*

Plaintiff's claim fails first because he has not demonstrated he had a serious medical need. The Eleventh Circuit has defined a serious medical need as (1) "one that has been diagnosed by a physician as mandating or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," or (2) one where " a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176,

1187–88 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Regardless, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

None of Plaintiff's injuries constitutes a serious medical need. Although when Plaintiff first went to medical following the incident, Plaintiff complained of being choked and that he had burning eyes, the nurse found that there was no redness to Plaintiff's eyes and no evidence of any injury to the neck. (Barnett Aff., Ex. A.) The rest of the medical exam findings were also normal. (*Id.*) Two days later, Plaintiff complained of back pain and a sore throat. (MacDonald Aff. ¶ 6.) The nurse diagnosed him with chronic back pain and a common cold. (*Id.* ¶ 10.) There is no causal connection between this diagnosis of chronic back pain and the incident involving Officer Bryant.

Based on the medical records, Plaintiff did not have a serious medical need immediately following the alleged incident. Additionally, Officers Bland and Smith both aver that they did not observe any physical injuries on Plaintiff. (Bland Aff. ¶ 10–11; Smith Aff. ¶ 6–7.) Every account of Plaintiff's story evidences that Plaintiff did not appear to have been

sprayed in the face with O.C. Spray or have sustained other serious injuries. (Barnett Aff. ¶ 7; Corridor Video.)

Further, neither condition Plaintiff was diagnosed with two days later rises to the level of a serious medical need. *See Burley v. Upton*, 257 Fed. App'x 207, 210 (11th Cir. 2007) (finding that lower back pain is not the type of serious condition that if ignored rises to the level of a constitutional violation); *Glenn v. Kitchen*, No. CV 111-082, 2011 WL 6997637, at *5 (S.D. Ga. Dec. 13, 2011) (finding that a common cold is not a serious medical need). If left unattended, neither of Plaintiff's conditions two days following the incident would likely pose a substantial risk of serious harm. Because Plaintiff cannot show that he suffered from a serious medical need, he cannot show that Officers Smith and Bland were deliberately indifferent to a serious medical need.

Second, even if Plaintiff did have a serious medical need, Plaintiff has failed to allege that Defendants response was so inadequate as to constitute deliberate indifference. Plaintiff admits that Officers Bland and Smith escorted him to medical following the altercation with Officer Bryant, conduct which does not show an insufficient response to a medical need.

Accordingly, the Court finds that based on the evidence submitted,

Plaintiff has failed to show that Officers Bland and Smith were deliberately indifferent to Plaintiff's serious medical need. Defendants are, therefore, entitled to summary judgment as to Plaintiff's claims of deliberate indifference.

### E. All Defendants are entitled to qualified immunity.

Defendants also assert that they are entitled to qualified immunity against all of Plaintiff's claims. (ECF No. 37 at 24–29.) Because Defendants were acting pursuant to their duties as government officials and have not violated any of Plaintiff's constitutional rights, Defendants are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the

discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The undisputed evidence here demonstrates that Defendants were government officials acting within their discretionary authority as correctional officers at Leon County Jail. Consequently, the question becomes whether Defendants violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

As discussed above, Defendants did not violate any of Plaintiff's constitutional rights. Plaintiff failed to show that Officer Bryant used excessive force on Plaintiff or that Officers Smith and Bland were deliberately indifferent to a serious medical need. Because Defendants acted within their discretionary authority and did not violate any of Plaintiff's constitutional rights, Defendants are entitled to qualified immunity.

## V.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that:

1.  Defendants Smith and Bland's Motion to Dismiss for Failure to State a Claim, ECF No. 19, should be **DENIED** because summary

judgment is appropriate thus mooting the motion to dismiss.

2.  Defendants' Motion to Strike Two Exhibits in Plaintiff's Response to Defendants' Motion for Summary Judgment, ECF No. 54, should be **GRANTED** with respect to Exhibit G and otherwise **DENIED**.

3.  Defendants' Motion for Summary Judgment, ECF No. 37, should be **GRANTED** and all pending motions **TERMINATED.**

**IN CHAMBERS** this 28th day of June 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.